## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-CR-30148-DWD-7 |
| | ) | |
| COREY HENDRIEX, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Defendant Corey Hendriex has filed a *pro se* Motion for Compassionate Release under 18 U.S.C. 3582(c)(1)(A) and U.S. Sent'g Guidelines Manual §§ 1B1.13 and 5H1.1. (Doc. 490). The Government has responded. (Doc. 500). For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

On February 17, 2023, Mr. Hendriex pleaded guilty to one count of knowingly and intentionally distributing a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. (Doc. 241). On June 15, 2023, this Court sentenced him to a term of 130 months' imprisonment. (Doc. 330). Hendriex is currently housed at FCI–Beckley Medium with an anticipated release date of December 6, 2028.

In the motion now before the Court, Hendriex does not assert medical conditions, advanced age, family-care responsibilities, or abuse in custody. Rather, he argues that the Sentencing Commission's 2024 "youthful individuals" amendment to U.S. Sent'g

Guidelines Manual § 5H1.1 ("Amendment 829"), together with what he views as
contemporary sentencing practice for youthful offenders, creates an extraordinary and
compelling reason for a sentence reduction; that the resulting disparity between his
sentence and sentences imposed on similar defendants today is itself extraordinary and
compelling; and that his rehabilitative programming in the Bureau of Prisons further
supports a reduction.

## II.  STATED GROUNDS FOR RELIEF

Hendriex's motion advances two principal grounds for relief, with rehabilitation
offered as a third: (1) changes in federal sentencing policy addressing youth and
youth-related criminal history, specifically Amendment 829, would have yielded a
shorter sentence if imposed today; (2) any resulting sentencing disparity between his
sentence and the sentence of an offender today is an "extraordinary and compelling"
reason to reduce his term; and (3) his rehabilitative conduct warrants additional
consideration.

## III. APPLICABLE LAW

"[A] court may not modify a term of imprisonment once it has been imposed,"
except as authorized by statute. 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) permits a court,
"upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant
after the defendant has fully exhausted all administrative rights," to reduce a term of
imprisonment "after considering the factors set forth in [18 U.S.C.] § 3553(a)" if the court
finds that "extraordinary and compelling reasons warrant such a reduction" and that the

reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Commission's current policy statement, U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2023), governs defendant-filed motions. Two features of the policy statement are highly pertinent here. First, § 1B1.13(b)(6) ("Unusually Long Sentence") narrowly permits consideration of certain non-retroactive changes in law as extraordinary and compelling, but only where (a) the defendant received an unusually long sentence; (b) has served at least 10 years; and (c) an intervening change in law would create a gross disparity between the sentence being served and the sentence likely to be imposed now, and even then non-retroactive Guidelines amendments are explicitly named as not qualifying as changes in law for this purpose. *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2023) (detailing the only nonretroactive changes that may be permissibly considered in sentence modification). Second, § 1B1.13(c) provides a general limitation: "Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." *Id.* § 1B1.13(c). The policy statement further confirms that if some other extraordinary and compelling reason is established, non-retroactive legal developments may be considered in determining the extent of any reduction, but not to create eligibility as a threshold matter. *Id.* § 1B1.13(c).

Finally, by statute, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* § 1B1.13(d) (restating

3

this limitation while allowing rehabilitation to be considered in combination with other circumstances).

## IV. DISCUSSION

### A.  Youthful Offender – Amendment 829

The purpose of Amendment 829 is to provide additional guidance for courts in prospective sentencing decisions regarding youthful offenders. In 2024 the Sentencing Commission revised § 5H1.1 ("Age") to broaden courts' ability at initial sentencing to consider age, including youthfulness, as a basis for a downward departure. The amendment explicitly states that "a downward departure may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses" and discusses contemporary research on adolescent development and the "age-crime curve." Amendment 829 took effect November 1, 2024.

Amendment 829 is not retroactive. Under § 1B1.10(d), only amendments that the Commission lists may be applied retroactively through § 3582(c)(2). The Commission has not listed Amendment 829. The Commission's own training primer reiterates that a court "must consult §1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)) to determine whether a sentence reduction is available under section 3582(c)(2)," and may not reduce a sentence based on unlisted amendments.

The § 1B1.13 framework forecloses using Amendment 829 to establish "extraordinary and compelling" reasons here. Section 1B1.13(c) expressly bars considering a non-retroactive guideline amendment as an extraordinary and compelling

4

reason. The sole carve-out, § 1B1.13(b)(6), permits consideration of non-retroactive changes in law only for unusually long sentences after the defendant has served at least 10 years, and even then excludes non-retroactive Guidelines amendments from serving as the qualifying change. See § 1B1.13(b)(6)–(c). Mr. Hendriex cannot satisfy that standard. He has not served 10 years of his sentence, which is a threshold requirement for § 1B1.13(b)(6). Moreover, his argument centers on a Guidelines amendment (Amendment 829) that the Commission has not made retroactive and which § 1B1.13(b)(6) excludes from serving as the qualifying "change in the law" regardless. *Id.*

*Concepcion* does not change this result. Mr. Hendriex cites *Concepcion v. United States*, 597 U.S. 481 (2022), for the proposition that courts may consider non-retroactive legal changes at sentence-modification proceedings. *Concepcion* confirms that sentencing courts generally may consider intervening developments unless Congress or the Constitution imposes limits. 597 U.S. at 486–87. It also recognized that in "many cases" a court may not recalculate a Guidelines range based on non-retroactive amendments, although such amendments may be "germane" as to the extent of a reduction. *Id.* at 492–94. But § 3582(c)(1)(A) itself requires that any reduction be "consistent with" the Commission's policy statement and § 1B1.13(c) now limits how non-retroactive changes may be used. Thus, *Concepcion* underscores rather than overrides the constraint that applies in this posture.

Seventh Circuit law aligns with this reading. The Seventh Circuit has held that non-retroactive statutory changes cannot themselves be the "extraordinary and compelling" basis for compassionate release. *See United States v. Thacker*, 4 F.4th 569, 571,

5

573–76 (7th Cir. 2021). And in *United States v. Black*, the Seventh Circuit reaffirmed that a
non-retroactive substantive change (there, § 924(c) "stacking") cannot serve as the
eligibility-creating reason "whether alone or in combination with other factors," while
recognizing that if a defendant is otherwise eligible on independent grounds, a change in
law may inform the extent of any reduction. *United States v. Black*, 131 F.4th 542 (7th Cir.
2025). That is precisely how § 1B1.13(c) is structured.

Finally, sentencing-day discretion is not post-judgment retroactivity. The thrust of
Mr. Hendriex's submission is that Amendment 829, if it had been available, would have
made a difference at his initial sentencing. That may be true in some cases; the
Commission has said as much. *See* Amendment 829 (explaining the scientific and
criminological basis for greater weight to youth). But § 3582(c)(1)(A) does not authorize
courts to implement de facto retroactivity for non-retroactive guideline changes through
the "extraordinary and compelling" gateway. *See* § 1B1.13(b)(6)–(c). When the
Commission intends an amendment to apply to already-sentenced defendants, it uses §
1B1.10(d) to say so. It did not do that for Amendment 829. In any event, it is doubtful that
the availability of a permissive downward deviation in sentencing guidelines would have
changed Hendriex's sentence because his age was known and considered by this Court
at the time of sentencing, and because the remaining 18 U.S.C. § 3553(a) factors weighed
against such a change then just as they do today.

### B.  Sentencing Disparity

Mr. Hendriex separately argues that even if Amendment 829 is non-retroactive, the fact that similar defendants sentenced today might receive lower terms creates an "extraordinary and compelling" circumstance. There are two problems with this theory.

First, as discussed above, § 1B1.13(c) squarely forbids using a non-retroactive change in law or guidelines as a basis for finding "extraordinary and compelling" reasons, except in the narrow, inapplicable situation described in § 1B1.13(b)(6). Presumably, the Commission is aware that when it creates a non-retroactive change to sentencing guidelines, the result will be exactly the type of disparity complained of by Hendriex here. One of the purposes of the Guidelines is to reduce sentencing disparities, but that is not their only purpose. When the Commission makes a change to the Guidelines nonretroactive, it is within their power under the Sentencing Reform Act to do so. *See* 18 U.S.C. §§ 3551 *et. seq*; 28 U.S.C. § 991.

Second, and more substantively, the kind of disparity Mr. Hendriex posits is systemic; a generalized difference that arises any time the law evolves without retroactive effect. That is not the individualized, defendant-specific hardship the policy statement contemplates in its enumerated reasons (serious medical conditions, advanced age, family-care crises, or abuse in custody), nor is it similar in gravity to those categories for purposes of the "other reasons" clause. *See* § 1B1.13(b)(1)–(5). Indeed, the Commission's creation of § 1B1.13(b)(6) shows that when it meant for some non-retroactive changes to matter, it imposed strict limiting conditions, such as "unusually long" sentences, a decade served, and "gross disparity." *Id.* § 1B1.13(b)(6). None of those prerequisites are met here.

7

The Court emphasizes that this is not to dismiss the significance of evolving youth jurisprudence. It is simply to apply the careful line the statute and policy statement draw between prospective guideline policy and the narrow circumstances when post-judgment reductions are appropriate.

### C. Rehabilitation

Mr. Hendriex reports that he has pursued rehabilitative programming despite staffing and access challenges. The Court commends these efforts. But Congress has made clear, and the policy statement reiterates, that rehabilitation alone cannot constitute an extraordinary and compelling reason. *See* 28 U.S.C. § 994(t); U.S. Sent'g Guidelines Manual § 1B1.13(d) (U.S. Sent'g Comm'n 2023). Seventh Circuit decisions are to the same effect. *See*, *e.g.*, *United States v. Peoples*, 41 F.4th 837, 840–41 (7th Cir. 2022) (holding that even rehabilitation of "extraordinary degree" is not sufficient ground for compassionate release under 28 U.S.C. § 994(t)).

To the extent Mr. Hendriex seeks to pair rehabilitation with Amendment 829 to make a combined showing, § 1B1.13(c) prevents using non-retroactive guideline changes to create eligibility as discussed above. At most, such changes may guide the extent of any reduction after a defendant otherwise establishes extraordinary and compelling reasons. *Id.* § 1B1.13(c). Because he has not cleared that threshold, the Court cannot consider Amendment 829 for that further, discretionary purpose.

Finally, as the Government notes, Hendriex has waived his right to seek compassionate release under any basis not allowable by § 1B1.13. (Doc. 500); (Doc. 241). As discussed above, § 1B1.13 explicitly excludes rehabilitation alone as a basis for

compassionate release. No assertion is made by Hendriex that the waiver was not knowing or voluntary. For that reason, even if the Court had discretion to consider rehabilitation alone in the general sense, it could not do so in Hendriex's case.

### D. SECTION 3553(A)

Even if the Court assumed for argument's sake both that the Court had discretion to make a determination on the matter and that Mr. Hendriex had shown "extraordinary and compelling" reasons, the 18 U.S.C. § 3553(a) factors would not support a reduction on the facts at hand.

The offense of conviction is distribution of methamphetamine, a serious drug-trafficking crime. The sentence imposed reflected the need to account for the offense's inherent harms and to provide just punishment. Nothing in the present record undermines those considerations.

The Court considered Mr. Hendriex's history and characteristics at sentencing. His present youth-related argument is not tied to any specific, new individualized fact about his personal development since sentencing; it rests on a general policy revision concerning how age and youthful conduct can be weighed at initial sentencing. That is not a post-sentencing development of the kind § 3582(c)(1)(A) targets. *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(6)–(c) (U.S. Sent'g Comm'n 2023). Since Mr. Hendriex has not raised a new fact or consideration regarding his history and characteristics, the Court's consideration of these factors and conclusions arising from that consideration at initial sentencing remain unchanged.

The need for specific and general deterrence remains substantial. Methamphetamine distribution fuels addiction and attendant criminal activity. A significant custodial term continues to serve both deterrent purposes and the need to protect the public. § 3553(a)(2)(B)–(C).

Section 3553(a)(6) addresses disparities among defendants with similar records who are convicted of similar conduct; it does not convert non-retroactive policy changes into individualized extraordinary circumstances. The Commission's own approach confirms as much: where it intended some non-retroactive legal changes to matter post-judgment, it created the narrow § 1B1.13(b)(6) pathway, with prerequisites not present here, and at the same time limited consideration of guideline amendments not made retroactive. § 1B1.13(b)(6), (c).

The Court has considered § 3553(a)(2)(D). Continued participation in BOP programming during the remainder of the custodial term remains an appropriate means for meeting treatment and rehabilitation goals. Nothing in the record shows that early release is necessary or warranted to provide needed correctional treatment in the most effective manner.

With the foregoing § 3553(a) factors weighing toward not modifying Hendriex's sentence, this Court finds that even if it had the discretion to order compassionate release under Hendriex's proposed grounds, and even if Hendriex had made a showing of "extraordinary and compelling" circumstances, it would not do so under the facts of this case.

## V. CONCLUSION

For these reasons, Corey Hendriex's Motion for Compassionate Release (Doc. 490) is **DENIED**.

**IT IS SO ORDERED.**

**Dated**: October 3, 2025

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge